UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JACOB ARNOLD,                                    Case No. 2:23-cv-00070

        Plaintiff,                              Hon. Robert J. Jonker
                                                 U.S. District Judge

    v.

COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.
_____/

## REPORT AND RECOMMENDATION

### I.    Introduction

In November of 2020, Plaintiff – Jacob Arnold – applied for child's disability insurance benefits and supplemental security income. (ECF No. 5-3, PageID.141; ECF No. 5-5, PageID.273.) Arnold asserted that he has the following severe impairments: autism spectrum disorder, obsessive-compulsive disorder (OCD), attention-deficit/hyperactivity disorder (ADHD), developmental learning disability, anxiety, and depression. (ECF No. 5-3, PageID.141.) The Social Security Administration denied Arnold's application, and Arnold requested a hearing before an Administrative Law Judge (ALJ). (ECF No. 5-2, PageID.44.) ALJ Wayne Ritter conducted this hearing on March 29, 2022. (*Id.*, PageID.64-100.) Then, on April 12, 2022, Judge Ritter issued a decision ruling that Arnold was not under a

disability from the alleged onset date through the date of decision.  (*Id.*, PageID.44-57.)

Arnold now appeals Judge Ritter's decision.  (ECF No. 1.)  He argues that the ALJ made the following errors:

> (1) The ALJ failed to ensure Arnold knowingly and intelligently waived his right to legal counsel, and further failed to adequately develop the record given Arnold was represented by his non-attorney grandmother who did not understand the hearing procedures, the Agency regulations, or her role as a representative.
>
> (2)  The ALJ committed reversable error by failing to evaluate the persuasiveness of the prior administrative medical findings from Jeffrey Boyd, Ph.D., and Barbara Jones Smith, Ph.D. in accordance with 20 C.F.R. §§ 404.1520c and 416.920c.

It is respectfully recommended that the Court affirm the decision of the Commissioner because substantial evidence exists in the record that supports the Commissioner's decision that Arnold is not disabled as defined by the Social Security Administration.   Contrary to Arnold's assertion, the ALJ explained his right to an attorney and offered to delay the hearing to allow Arnold to obtain an attorney. Arnold declined and decided to proceed with his grandmother as his representative. Arnold's grandmother, Jill Hauck-Arnold, had assisted Arnold with the application process, and was well prepared to represent Arnold.  She was appointed as his non-attorney representative before the hearing, and she was a qualified non-attorney representative.

Arnold argues that the ALJ had a duty to fully develop the record because he was not represented by an attorney, and that the ALJ neglected that duty.  Arnold failed to establish that the record was underdeveloped or that the ALJ made any

2

errors in considering the evidence or in his decision.  Finally, Arnold failed to establish that the ALJ erred by failing to evaluate the 2020 opinions of Dr. Jeffrey Boyd, Ph.D., and Dr. Barbara Jones Smith, Ph.D.  Their opinions were from Arnold's disability claim that was denied before he made this newer claim of disability. Instead, the ALJ considered the opinions provided by Dr. Bruce Douglass, Ph.D., and Dr. Judith Strait, Psy.D.  Both Dr. Douglass and Dr. Strait gave their opinions based upon the claim for disability in this case.  The ALJ found that Arnold had some social limitations and limited Arnold to "**no interaction with the public and only occasional interaction with coworkers and supervisors.**"  (ECF No. 5-2, PageID.49.)  In the opinion of the undersigned, the ALJ did not err.  Accordingly, it is recommended that the Court affirm the decision of the Commissioner.

## II.    ALJ's Decision

ALJ Ritter's fourteen-page decision is the focus of this appeal.  In this decision, ALJ Ritter stated the five-step sequential process used to determine whether an individual is disabled.  (ECF No. 5-2, PageID.45-46.)

Generally, the ALJ must employ a five-step sequential analysis to determine whether the claimant is disabled as defined by the Social Security Act.  *See* 20 C.F.R. § 404.1520; *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004).  At step one, the ALJ determines whether the claimant can still perform substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(i).  At step two, the ALJ determines whether the claimant's impairments are considered "severe."  20 C.F.R. § 404.1520(a)(4)(ii).  At step three, the ALJ determines whether the claimant's impairments meet or equal a

listing in 20 C.F.R. part 404, Subpart P, Appendix 1.  20 C.F.R. § 404.1520(a)(4)(iii).

Before proceeding to step four, the ALJ determines the claimant's residual functional

capacity (RFC).  20 C.F.R. § 404.1520(e).  At step four, the ALJ determines whether

the claimant has the RFC to still perform past relevant work.  20 C.F.R. §

404.1520(a)(4)(iv).  At step five, after considering the claimant's RFC, age, education,

and work experience, the ALJ determines whether a significant number of other jobs

exist in the national economy that the claimant can perform.  20 C.F.R. §

404.1520(a)(4)(v).  If the ALJ determines the claimant is not disabled under any step,

the analysis ceases and the claimant is declared not disabled.  20 C.F.R §

404.1520(a)(4).

In this case, the ALJ adhered to the five step process.  At step one, the ALJ

found that Arnold had not engaged in substantial gainful activity since October 1,

2003, the alleged onset date.  (*Id.*, PageID.46.)

At step two, the ALJ found that Plaintiff had the following severe impairments:

autism spectrum disorder and anxiety disorder.  (*Id.*, PageID.47.)  The ALJ also

considered Plaintiff's asthma and noted that it was being managed medically.  He

considered Plaintiff's obesity and complaints of headaches, determining that these

conditions were not severe.  (*Id.*)  Additionally, the ALJ noted that he had considered

Plaintiff's mental health symptoms regardless of diagnosis, and that the medical

records included other mental health and neurological disorders, including OCD,

ADHD, Tourette's syndrome, and a tic disorder.  (*Id.*)

4

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R., Part 404, Subpart P, App'x 1.  (*Id*.)  The ALJ noted that he had considered and rejected the following listings: 12:06 (anxiety and OCD) and 12:10 (autism spectrum disorder).  (*Id*., PageID.47-48.)  With respect to the "Paragraph B" criteria, the ALJ found that Plaintiff had moderate limitations in remembering and applying information, interacting with others, concentrating, persisting, and maintaining pace, and adapting or managing self.  (*Id*., PageID.48.)

Before going on to step four, the ALJ made findings regarding Plaintiff's RFC. The ALJ stated that Arnold could perform a full range of work at all exertional levels but that he was limited "to simple, routine, and repetitive tasks, with no fast-paced work, only simple, work-related decisions, occasional workplace changes, no interactions with the public and occasional interaction with coworkers and supervisors." (*Id*., PageID.49.)

In determining Arnold's RFC, the ALJ considered Arnold's description of his symptoms.  The ALJ noted that he was utilizing a two-step process to evaluate these symptoms.  First, he considered whether Arnold's impairments could reasonably be expected to produce Arnold's pain and other symptoms.  Second, he considered the intensity, persistence, and limiting effects of these symptoms to determine the extent to which they limit Plaintiff's functional limitations.  (*Id*.)

The ALJ outlined both Arnold and his grandmother's statements set forth in his function report and the statement made during the hearing.  (*Id.,* PageID.49-50.)

5

The ALJ concluded that Arnold's medically determinable impairments could reasonably be expected to cause his alleged symptoms.  But the ALJ found that Arnold's statements regarding the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record.  (*Id.*, PageID.50.)  The ALJ based his conclusion on Arnold's reports of activities of daily living that are consistent with the ability to work within his RFC. (*Id.*, PageID.53.)

The ALJ noted that Arnold's assertions that he had trouble understanding, completing tasks, and following instructions were inconsistent with his admissions that he helped care for his grandmother and pets, prepare simple meals, complete household chores, shop, and handle money. (*Id.*)  Although Arnold claims that he has difficulty concentrating, he engaged in hobbies such as reading, writing, playing games, studying "crypto zoology", and engaging with others over the internet.  (*Id.*)

The ALJ outlined the medical opinions and prior administrative findings in the record and set forth his conclusions regarding their persuasiveness.  (*Id.*, PageID.53-55.)  The ALJ found that Arnold's grandmother's opinions were only partially persuasive because Arnold's activities showed that he is more capable than what she had stated in function reports, in a letter, and during the hearing.  (*Id.*, PageID.53.)

The ALJ also found consultative examiner Dr. Wiger's June 2020 medical opinion partially persuasive.  The ALJ reasoned that Dr. Wiger's assessment that Arnold "is not able to handle the stressors of at least an entry-level workplace" was

inconsistent with normal clinical findings on mental status examination, minimal treatment history, and functional ability shown in the records. (*Id.*, PageID.53-54.)

The ALJ did not consider the January 2020 opinion of Arnold's primary care physician Dr. William Fox, M.D. Dr. Fox opined that Arnold's autism, OCD, and ADHD would prohibit his employment. The ALJ stated he would not consider that opinion because disability determinations are reserved to the Commissioner. (*Id.*, PageID.54.)

The ALJ found the opinions of consultative examiners Dr Jacobson and Dr. Cappone that Arnold had marked to extreme limitations unpersuasive because the opinions lacked clinical support from the mental status examination. (*Id.*) On examination, Arnold exhibited that he was fully oriented, with intact knowledge, his abstract thinking was normal, and his judgment was intact. (*Id.*) The ALJ noted that the evaluation failed to find that Arnold had trouble with focus, attention, understanding, or recalling information. (*Id.*) The ALJ found that "the opinion is a gross underestimation of the claimant's abilities in light of the totality of the record." (*Id.*)

The ALJ found that the April 2021 opinion of State agency psychological consultant Dr. Bruce Douglass, Ph.D. partially persuasive. (*Id.*, PageID.54-55.) Dr. Douglass found mild limitations in understanding, remembering, or applying information and moderate limitations in interacting with others, concentrating, persisting, or maintaining pace, and adapting or managing self. (*Id.*, PageID.55.) Dr. Douglass opined that Arnold possessed attention and concentration to perform simple

tasks, and would work well alone or with familiar groups, but would be slow to adjust to changes, and could not work well with the public.  (*Id*.)

State agency psychological consultant Dr. Judith Strait, Psy.D., opined that Arnold had moderate limitations in understanding, remembering, or applying information, in interacting with others, in concentrating, persisting, or maintaining pace, and in adopting or managing oneself.  (*Id*., PageID.55.)   Dr. Strait found that Arnold would have difficulty with detailed tasks and focus, and he would not work well with the public but could work alone or in small familiar groups with occasional interaction with co-workers and supervisors. (*Id*.)  Dr. Strait determined that Arnold would struggle with high or unpredictable levels of work, work stress, or frequent changes.  Dr. Strait noted that Arnold could perform simple and routine tasks on a sustained basis.  The ALJ found this opinion generally persuasive because it was consistent with the overall good mental examination findings, the subjective reports of the level of functioning, and the educational reports.  (*Id*.)

The ALJ noted that Arnold had no past relevant work (PRW), a conclusion that negated the need for a Step Four finding regarding Arnold's ability to perform PRW.

At Step Five, the ALJ considered Arnold's age, education, work experience and RFC, and concluded that a significant number of jobs existed in the national economy that Arnold could perform, including hospital cleaner (100,000 jobs), hand packager (257,000 jobs), and kitchen helper (58,000 jobs).  (*Id*., PageID.56.)

As a result of these determinations, the ALJ decided that Arnold was not under a disability as defined under the Social Security Act from October 1, 2003, through the date of the decision.  (*Id.*, PageID.57.)

### III.    Standard of Review

Review of an ALJ's decision is limited to two issues: (1) "whether the ALJ applied the correct legal standards," and (2) "whether the findings of the ALJ are supported by substantial evidence."  *Winslow v. Comm'r of Soc. Sec.*, 566 F. App'x 418, 420 (6th Cir. 2014) (quoting *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009)); 42 U.S.C. § 405(g).  The Court may not conduct a *de novo* review of the case, resolve evidentiary conflicts, or decide questions of credibility.  *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and the Commissioner's findings are conclusive provided they are supported by substantial evidence. 42 U.S.C. § 405(g).

Substantial evidence is defined as more than a mere scintilla of evidence but "such relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Jones v. Sec'y of Health & Human Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991).  In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and whatever evidence in the record fairly detracts from its weight. *Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984) (citations omitted). The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way,

without judicial interference. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords the administrative decision maker considerable latitude and acknowledges that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993).

## IV.    Analysis

### 1.  Right to an Attorney

Arnold argues that the ALJ failed to adequately develop the record, or to make the record clear that Arnold knowingly waived his right to counsel by agreeing to allow his grandmother to represent him despite her lack of knowledge of the hearing procedures and social security regulations.

A claimant has the right to retain an attorney or any person who is not an attorney to represent him before the Social Security Administration.  20 C.F.R. § 404.1705.  A non-attorney representative must be capable of giving valuable help and must possess a good character and reputation.  *Id*.  An ALJ has an obligation to fully develop the record where a claimant is unrepresented and unfamiliar with the hearing procedures.  *Lashley v. Secretary*, 708 F.2d 1048, 1051 (6th Cir. 1983).  The ALJ has a duty to "scrupulously and conscientiously explore all the relevant facts when adjudicating claims brought by an unrepresented claimant."  *D'Angelo v. Commissioner*, 475 F. Supp.2d 716, 720 (W.D. Mich. 2007).  However, "the mere fact that a claimant was unrepresented is not grounds for reversal." *Duncan v. Secretary*,

801 F.2d 847, 856 (6th Cir. 1986).  The reviewing Court must look at the record in
each case to determine whether it was fully developed.  (*Id*.)

The record here indicates that the ALJ did not err by allowing Arnold's
grandmother, Hauck-Arnold, to represent him at the hearing.  The ALJ fully
explained that Arnold had a right to be represented by an attorney.  Also, the record
establishes that Hauck-Arnold was qualified to represent Arnold during the
proceedings.  She is a licensed and registered Occupational Therapist and has
experience working with special education students.  (*See* ECF No. 5-6, PageID.304
(letter from Hauck-Arnold requesting appeal of ALJ decision).)   She was appointed
as Arnold's representative before the hearing.   (ECF No. 5-4, PageID.201
(appointment of auck-Arnold by Arnold).)  As Arnold's representative, Hauck-Arnold
communicated with the Social Security Administration prior to the hearing with the
ALJ and indicated that Arnold did not want an attorney.  (ECF No. 5-6, PageID.420.)
Hauck-Arnold indicated on March 15, 2022, that she believed the file was up to date
and Arnold had not received new medical treatment.  (*Id*., PageID.421.)

During the March 29, 2022 hearing, the ALJ explained the differences between
being a representative and a witness.  (ECF No. 5-2, PageID.65-68.)  The ALJ
explained that the claimant's representative makes arguments on behalf of the
claimant and a witness testifies to observations about the claimant.  (*Id*.)  The ALJ
explained that Hauck-Arnold could not be both a representative and a witness.  (*Id*.,
PageID.66.)   The ALJ also explained that Hauck-Arnold's statements were not

testimony.  The ALJ also said that "he can consider everything" because there are "really no hard rules of evidence." (*Id.*, PageID.66.)

Before Arnold agreed to proceed with Hauck-Arnold as his representative, the ALJ explained that he had a right to representation by counsel and further explained that attorneys could not charge a fee unless it was approved by the Social Security Administration and that normally attorneys do not get paid unless Social Security benefits were awarded. (*Id.*, PageID.70-71.) Arnold affirmed that he understood his rights to representation. (*Id.*, PageID.71.) The ALJ then offered to delay the hearing so that Arnold could obtain a lawyer. (*Id.*) Arnold indicated that he wanted Hauck-Arnold to represent him and to proceed with the hearing. (*Id.*, PageID.73.)

At the beginning of the hearing, Hauck-Arnold indicated that although the records before the Court were relevant, she believed that many were inaccurate. (*Id.*, PageID.74.) She indicated that no other evidence existed and that the record was complete. (*Id.*, PageID.74.)

When Hauck-Arnold indicated that she had no questions to ask Arnold because she knew everything about him, ALJ Ritter asked her to explain to him why he should find Arnold disabled. (*Id.*, PageID.89.) Hauck-Arnold did exactly that. (*Id.*, PageID.90-94.) Hauck-Arnold explained that Arnold's autism was getting worse as he aged. (*Id.*, PageID.90.) She described him as a loner but not antisocial. (*Id.*, PageID.90-91.) She stated that he experienced sensitivity to smells, sights, and textures of clothes, and food. For example, Arnold does not like the smell of cleaning solvent. (*Id.*, PageID.90.) She conceded that Arnold has average intelligence, but his

12

autism and OCD interfered with his daily activities.  (*Id*., PageID.91.)  She criticized his high school educational programming as failing to teach functional tasks like budgeting, planning, and cooking.  (*Id*.)  Unfortunately, according to Hauck-Arnold, the programming was not focused on Arnold's needs.  She explained that Arnold struggles to complete and stay on task and will forget even a one-step direction.  (*Id*., PageID.92.)  She indicated that when he sweeps or picks up garbage, his work is not thorough.  (*Id*.)   She said that Arnold worked in a program during high school but only three hours per week.  (*Id*.)  He attempted to work at Dominos, but it was loud and bright, with people coming and going.  His job was to fold boxes, but he was unable to complete the task and do enough.  He left the job in tears and did not return. (*Id*.)  Finally, Hauck-Arnold explained that she tried to help Arnold find a job in their community but there are no jobs that he can perform, because he needs someone there to provide him with step-by-step instruction.  (*Id*., PageID.93-94.)

Importantly, Arnold has not shown that the ALJ failed to fully develop the record.  At the hearing, Plaintiff indicated that the record was complete.  Hauck-Arnold stated that she had "all the information" on Arnold and had done "all the work." (ECF No. 5-2, PageID.72.)  Hauck-Arnold acknowledged that she received the record from the Social Security Administration and had no objection to the ALJ considering the record.  (*Id*., PageID.73-74.)  During the hearing, Hauck Arnold made the following statements:

> ALJ:  Okay.  Did you have any objections to my considering those records?
>
> REP:  No.  I don't believe a lot of 'em are very accurate.  But no.

ALJ:  Okay.  They are relevant though.  So, you don't have any problem with that.

REP:  Relevant, but they're not accurate.

(Exhibits 1A through 8F, previously identified, were received into evidence and made a part of the record.)

ALJ:  Do you have any other written evidence for my consideration? Or do you consider the record complete?

REP:  No.

ALJ:  Okay.  Record's complete?  Ma'am, did you say - -

REP:  Yeah.

(*Id.*)

Arnold points to two errors that the ALJ made during the hearing.  First, Arnold states that all his educational records were not included in the record.  But Arnold's educational records are part of the record and were considered by the ALJ. (ECF No. 5-7, PageID.423-459.)  Second, Arnold argues that the ALJ should have questioned the vocational expert regarding whether a hospital cleaner position could be performed by an individual who is limited to no interaction with members of the general public.  Even if the Court were to accept this argument and excluded the hospital cleaner position as a job that Arnold could perform, there still exists significant jobs in the national economy that are available within Arnold's RFC, including hand packager (257,000 jobs) and kitchen helper (58,000 jobs).  (ECF No. 5-2, PageID.56.)

Plaintiff was represented by an attorney before the Appeals Council. (ECF No. 5-2, PageID.35.) Counsel argued before the Appeals Council that the ALJ failed to develop the record. (*Id.*, PageID.27-29.) Arnold never presented any new and material evidence that should be considered. In the opinion of the undersigned, the record was fully developed and considered by the ALJ.

## 2. Medical Opinion Evidence

Arnold argues that the ALJ erred by failing to evaluate the prior administrative medical findings from doctors Boyd, Ph.D., and Jones Smith, Ph.D. An ALJ must articulate the persuasiveness of a medical opinion. 20 C.F.R. § 404.1520c(a). An ALJ uses five factors to articulate the persuasiveness of a medical opinion: (1) supportability of the relevant objective evidence and supporting explanations, (2) consistency of the opinions with medical evidence or nonmedical evidence in the record, (3) relationship with the claimant, (4) specialization, and (5) other factors that tend to support or contradict the opinion. 20 C.F.R. § 404.1520c(a) and (c).

The most important factors an ALJ considers are the supportability and consistency of the medical opinions. 20 C.F.R. § 404.1520c(a). The ALJ is required to articulate how he or she considered the medical opinions and prior administrative medical findings and explain the supportability and consistency factors in the decision. 20 C.F.R. § 404.1520c(b)(2). An ALJ will articulate the persuasiveness of "all of the medical opinions and all of the prior administrative medical findings in your case record." 20 C.F.R. § 404.1520c(b) and § 416.920c(b).

Arnold filed a previous Social Security disability claim in October of 2019, and that claim was denied by the Social Security Administration on March 25, 2020. (ECF No. 5-3, PageID.114-115.)  Doctors Boyd and Jones Smith both assessed Arnold in February of 2020, for this earlier claim for disability.  They indicated the following:

**Rate the individual's social interaction limitations:**

**The ability to interact appropriately with the general public.**
Moderately limited

**The ability to ask simple questions or request assistance.**
Not significantly limited

**The ability to accept instructions and respond appropriately to criticism from supervisors.**
Not significantly limited

**The ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes.**
Moderately limited

**The ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness.**
Not significantly limited
**Explain in narrative form the social interaction capacities and/or limitations:**
The claimant would be limited to brief and superficial contact with co-workers; no contact with the public.

(ECF No. 5-3, PageID.110, 125).  Then, when Arnold filed this claim after his previous claim had been denied by the Social Security Administration, doctors Bruce Douglass, Ph.D., and Judith Strait, Psy.D., conducted psychological assessments in 2021. Arnold argues that doctors Boyd and Jones Smith's assessments on his earlier disability claim were more restrictive than the 2021 psychological assessments made for this claim by doctors Douglass and Strait.  The ALJ found persuasive the opinion of Dr. Douglass that Arnold "would not work well with the public and would work well best alone or in small familiar groups."  (ECF No. 5-2, PageID.54; ECF No. 5-3., PageID.138.)  The ALJ found Dr. Strait's similar opinion that Arnold "would not work well with the general public but may work best in alone or in small familiar groups

16

with occasional interaction with coworkers and supervisors" persuasive.  (ECF No. 5-2, PageID.55; ECF No. 5-3, PageID.157.)

Dr Douglass found that Arnold had the following social limitations:

Does the individual have social interaction limitations? **Yes**

| Social Interaction Limitation | Rating |
| --- | --- |
| The ability to interact appropriately with the general public | Moderately Limited |
| The ability to ask simple questions or request assistance | Not Significantly Limited |
| The ability to accept instructions and respond appropriately to criticism from supervisors | Moderately Limited |
| The ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes | Moderately Limited |
| The ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness | Moderately Limited |

Explain in narrative form the social interaction capacities and/or limitations.
**Social functioning is restricted, and he will not work well with the public. He has impaired social reciprocity skills. He will work best alone or in small, familiar groups. Self care is intact. He is cooperative and appropriate at appointments.**

(ECF No. 5-3, PageID.138.)

Dr. Strait found:

Does the individual have social interaction limitations? **Yes**

| Social Interaction Limitation | Rating |
| --- | --- |
| The ability to interact appropriately with the general public | Moderately Limited |
| The ability to ask simple questions or request assistance | Not Significantly Limited |
| The ability to accept instructions and respond appropriately to criticism from supervisors | Moderately Limited |
| The ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes | Moderately Limited |
| The ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness | Moderately Limited |

Explain in narrative form the social interaction capacities and/or limitations.
**2020 CE:  The claimant  reports that he interacts with people through gaming online.  He reports spending about 8 hours online.  He made little eye contact.  His speech was clear and 100% understandable.  He reports being uncomfortable around stranger and in a large crowd.  He did not appear to be depressed, anxious, irritable, or angry. IEP:  The claimant is noted to demonstrate some limitation in reading social cues, but appears to have made progress.**

(*Id.*, PageID.156.)  Dr. Strait further opined that Arnold had some moderate adaptive limitations and explained those limitations as follows:

MRFC Additional Explanation

**The claimant's cognition and concentration are impaired. He will have difficulty with detailed tasks that require prolonged attention and focus. His social functioning is reduced and he may not work well with the general public. He may work best alone or in a small, familiar group with occasional interaction with coworkers and supervisors. The claimant may struggle with high levels or unpredictable levels of work stress or frequent changes in work routine. The claimant retains the capacity to perform simple, routine tasks on a sustained basis.**

(*Id.*, PageID.157.)

Arnold argues that the ALJ should have considered Dr. Boyd and Dr. Jones Smith's opinions from his previously denied claim. Those doctors opined that Arnold should be limited to *brief and superficial contact* with coworkers as opposed to *occasional contact* with coworkers. In the earlier claim, the Social Security Administration considered Dr. Boyd and Dr. Jones Smith's opinion and denied Arnold's claim. The Social Security Administration found that Arnold could perform numerous jobs in the economy under these non-exertional limitations.[1] (ECF No. 5-3, PageID.114-115.) The medical opinions of Dr. Boyd and Dr. Jones Smith were made for Arnold's earlier disability claim. Those opinions were not based upon the pending disability claim. Doctors Boyd and Dr. Jones Smith were hired as State agency consultants for Arnold's prior claim. In the opinion of the undersigned, the ALJ did not need to consider the state agency consultants' opinions on Arnold's regarding the previous claim of disability. For this claim, State agency consultants Dr. Douglass and Dr. Strait provided opinions based upon the medical record. The ALJ properly considered Dr. Douglass and Dr. Strait's opinions.

Finally, all the doctors agree that Arnold had moderate limitations in getting along with coworkers. Those limitations were reflected in the ALJ Ritter's RFC

---

[1]    The 2019 disability claim was denied on reconsideration in July of 2020. (ECF No. 5-3, PageID.116-128.)

finding.  The ALJ properly considered the psychological assessments provided by doctors Douglass and Strait for this claim.  The ALJ's RFC finding restricted Arnold to "**no interaction with the public and only occasional interaction with coworkers and supervisors.**"  (ECF No. 5-2, PageID.49.)  In the opinion of the undersigned, the ALJ did not err in assessing these opinions.  Moreover, the ALJ's decision is supported by substantial evidence.

### V.  Recommendation

In the opinion of the undersigned, there is substantial evidence in the record that supports the Commissioner's decision that Arnold is not disabled as defined by the Social Security Administration.  It is respectfully recommended that the Court affirm the decision of the Commissioner.

NOTICE TO PARTIES:  Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).  Failure to file timely objections constitutes a waiver of any further right to appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985).


Dated:  June 10, 2024                                       /s/ *Maarten Vermaat*
                                                           MAARTEN VERMAAT
                                                           U.S. MAGISTRATE JUDGE